UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA GREEN, ANTHONY FISHER, | ) | |
| AND TANEAL JONES, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 11 C 7067 |
| | ) | |
| CITY OF CHICAGO, et. al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion of Defendant Officer Benny Williams ("Officer Williams") for summary judgement and the motion of Defendant City of Chicago (the "City") for partial summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth below, the Court grants Officer Williams' motion for summary judgment and grants the City's motion for partial summary judgment.

## BACKGROUND

The following facts are derived from the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Rule 56.1 ("Local Rule 56.1"). The Court reviews each Local Rule 56.1 statement and disregards any argument, conclusion, or assertion unsupported by the evidence in the record.

On March 19, 2010 Plaintiffs Debra Green ("Green"), Anthony Fisher ("Fisher"), and Taneal Jones ("Jones") (collectively the "Plaintiffs") were driving on the City's south side in a funeral procession for Green's sister, Michelle Green. The cars travelling in the funeral procession each had their hazard lights flashing and bore bright florescent stickers indicating the nature of the procession. Green and Fisher were driving a Pontiac Grand Prix in the middle of the procession. Jones was driving separately, and her maroon Range Rover was also positioned in the middle of the procession. While proceeding to the cemetery, the Plaintiffs observed a white Lexus weaving in and out of the funeral procession. The white Lexus was driven by Defendant, Chicago Police Officer Sylshina London ("Officer London") driving her personal car while wearing her police uniform. At some juncture, London used her cellular phone and dialed 911 and reported a "10-1," a police code for an officer in need of immediate assistance. Officer London reported that individuals driving in the funeral procession had thrown things at her car when she passed them.

Officer Williams, while on patrol in his marked police car in the general vicinity of the funeral procession, received a call from the Chicago Police dispatcher relaying Officer London's call for assistance. At the time of the call, the circumstances surrounding the call were vague. Officer Williams and his partner drove their patrol car to the vicinity of the call for assistance. When Officer Williams arrived in the area of the call, they observed Officer London in the street, pointing in the direction that the funeral procession was moving. Officer London told Officer

Williams about a "red or maroon Range Rover" that she was involved in an incident with.

Officer Williams drove down the street and found Jones' maroon Range Rover and proceeded to pull the car over. Other police units dispatched to the area also pulled over other cars in the funeral procession. Green and Fisher were pulled over by other Chicago Police Officers, and did not encounter Officer Williams. The Plaintiffs were detained until several Chicago Police supervisors arrived to the scene and began to sort through the details of what transpired.

Chicago Police Lieutenant Glenn Evans ("Lieutenant Evans") arrived contemporaneously with the other Chicago police officers and observed the removal of Green from her vehicle. Lieutenant Evans, was the supervisor of Officer London and Officer Williams. When Lieutenant Evans found out that Green's sister had passed away and they were going to the cemetery, he allowed the Plaintiffs to leave if they agreed to turn themselves into police at a later time. The police officers kept Fisher's identification card. As a result of the incident, the Plaintiffs missed the burial of Michelle Green.

During the evening of March 19, 2010, Fisher went to the Chicago Police Station to retrieve his identification card that was taken during the March 10, 2010 funeral incident. At the police station Officer London identified Fisher as one of the individuals that she had a confrontation with. Several unknown Chicago Police

officers handcuffed Fisher and placed him in a holding cell and he was not released until the following day. After several weeks Fisher and Jones were charged with assault while Green was charged with battery.

In mid-May 2010, Green contacted the Independent Police Review Authority ("IPRA") to report what had transpired with Officer London. On March 23, 2010, IPRA Investigator Vincent Jones called Green and told her he would determine if there was a street camera that may have recorded the encounter with Officer London.

On September 21, 2010, the Plaintiffs were tried of their respective charges in Cook County, Illinois. Officer Williams testified in the trial of Green and gave a brief explanation of how he was called to the scene of Officer London's call for assistance and how he pulled over Jones' maroon Range Rover. Officer London provided extensive testimony about the March 2010 incident. She testified that while her vehicle was sitting parallel to Green's vehicle, Green threw a bottle through Officer London's window and hit her in the face. Based on Officer London's testimony, Green was found guilty of battery; however, Fisher and Jones were found not guilty.

After Green's conviction, the IPRA turned over a street camera video which recorded the March 2010 incident. The recording showed that Green did not throw a bottle at Officer London's vehicle or hit her in the face. Officer London was charged with a single count of perjury for knowingly testifying falsely during the September 21, 2010 trial of the Plaintiffs. As a result of the video, Green's conviction was

vacated on August 17, 2011. On January 18, 2013, Officer London was found guilty of perjury following a bench trial.

On January 27, 2015, the Plaintiffs filed their nine-count First Amended Complaint ("FAC") against the Defendants Officer Williams, Officer London, the City and multiple unknown Chicago Police Officers (collectively the "Defendants"). The Plaintiffs assert: (1) that Officer Williams and Officer London unlawfully detained/ arrested the Plaintiffs in violation of 42 U.S.C. § 1983 ("§ 1983"); (2) that Officer Williams failed to intervene in violation of § 1983; (3) the Defendants' failure to turn over the street video of the March 2010 encountered constitutes a *Brady* violation under § 1983; (4) the City is liable for the actions of its police officers under *Monell*; (5) Officer Williams and Officer London falsely imprisoned and arrested the Plaintiffs in violation of Illinois law; (6) that Officer Williams failed to intervene in violation of Illinois law; (7) Officer Williams and Officer London maliciously prosecuted the Plaintiffs in violation of Illinois law; (8) Officer Williams and Officer London intentionally inflicted emotional distress on the Plaintiffs in violation of Illinois law; and (9) an Illinois law claim for indemnification. On January 27, 2015, the City moved for partial summary judgment on Count IV of the Plaintiffs' FAC which asserts a *Monell* claim against the City. The City also moved for summary judgment on all claims relating to the Defendant unknown or unnamed officers. On March 3, 2015, the Plaintiffs voluntarily moved to dismiss all unknown officers from their FAC, which mooted the City's request for summary judgment on their behalf.

On March 10, 2015, Officer Williams moved for summary judgment on all counts levied against him.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Winsley v. Cook Cnty.*, 563 F.3d 598, 602–03 (7th Cir. 2009). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the nonmoving party. *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). The moving party must identify the specific portions of the record which it believes establishes the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court construes all facts and draws all reasonable inferences in favor of the nonmoving party. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).

**DISCUSSION**

## I. Officer Williams

Officer Williams asserts that the Plaintiffs' claims against him are deficient and not supported by the evidence in the record. Officer Williams moves for summary judgment on Counts I, II, III, V, VI, VII, and VIII of the Plaintiffs' FAC.

### 1. Unlawful Detention and False Arrest Claims (Count I)

The Plaintiffs assert that when Officer Williams arrived at the scene of the funeral procession he unlawfully detained them in violation of § 1983. A police officer who unlawfully restrains an individual's movement commits an unlawful seizure within the meaning of the Fourth Amendment. *See Dunaway v. New York*, 442 U.S. 200, 207–08 (1979); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1180 (7th Cir. 1994). To prevail on their claim for unlawful detention, the Plaintiffs must prove that (1) a seizure occurred; and (2) the seizure was unreasonable. *See Carlson v. Bukovic*, 621 F.3d 610, 619 (7th Cir. 2010). The Plaintiffs all contend that Officer Williams unlawfully detained them; however, the record is clear that Officer Williams only had contact with Jones after removing her from her vehicle. Green and Fisher have no recollection of encountering Officer Williams in March 2010 when they were pulled over. Therefore, for the purposes of determining the Plaintiffs' claim, the Court will exclusively resolve Jones' encounter with Officer Williams. For the purposes of his motion for summary judgment, Officer Williams concedes that his detainment of

Jones constitutes a seizure. Green and Fisher were not detained by Officer Williams, therefore no seizure occurred. Accordingly, the only question for us to determine is if Officer Williams acted reasonably in detaining Jones.

Officer Williams contends that he had probable cause to believe Jones had committed a crime, and thus the seizure was objectively reasonable. The existence of probable cause is an absolute bar to a § 1983 claim for false arrest or unlawful detainment. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for . . . false imprisonment . . . ."). "A police officer has probable cause to arrest when, at the moment the decision is made, the facts and circumstances within h[is] knowledge and of which []he has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 878–79 (7th Cir. 2012) (citation omitted). This "flexible, commonsense approach does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable." *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999). Further, there is no requirement that officers resolve every inconsistency in witness reports in forming probable cause, *Spiegel v. Cortese*, 196 F.3d 717, 725 (7th Cir. 1999), or that they conduct further investigation after establishing probable cause. *Anderer v. Jones*, 385 F.3d 1043, 1049 (7th Cir. 2004). The Seventh Circuit has also "consistently held that an identification or a report from a single, credible victim or eyewitness can provide

the basis for probable cause." *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) (collecting cases).

Officer Williams contends that when he detained Jones he had probable cause to do so and therefore his seizure was reasonable. The Plaintiffs advocate for the Court to pass on making a determination of probable cause in favor of a jury determining its existence. However, "[i]f facts sufficient to create probable cause are undisputed, probable cause is a question of law." *Potts v. City of Lafayette*, 121 F.3d 1106, 1112 (7th Cir. 1997). A dispute concerning some facts relevant to determining the existence of probable cause does not preclude a finding of probable cause, so long as the finding survives after adopting the plaintiff's version of disputed facts supported by the record. (Even if disputed facts are necessary to the determination of probable cause, the court may still find the existence of probable cause as long as the plaintiffs version of the facts is adopted. *Cervantes v. Jones*, 188 F.3d 805, 808 n. 2 (7th Cir. 1999). In viewing the undisputed facts before the Court, taken in the light most favorable to the Plaintiffs, a determination of probable cause can be made as a matter of law.

In this case, Officer Williams possessed probable cause to detain Jones when he pulled over Jones' car and detained her. Officer Williams testified during an internal police investigation and at Green's criminal trial that he and his partner arrived in the area pursuant to a 10-1 call for officer assistance. When Officer

Williams arrived on the scene he identified Officer London in her uniform, standing in the street, and frantically pointing in the general direction that the funeral procession had gone. Officer London told Officer Williams about Jones' Range Rover she had been involved in an incident with. Relying on Officer London's statements Officer Williams proceeded to track down Jones' Range Rover and detain its occupants.

The fact that Officer London's statements to Officer Williams turned out to be fictitious is not a consideration: probable cause "does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable." *Fleming*, 674 F.3d at 878-79. "[T]his is an ex ante test: the fact that the officer later discovers additional evidence unknown to h[im] at the time of the arrest is irrelevant to whether probable cause existed at the crucial time." *Qian*, 168 F.3d at 953-54. As other Chicago police officers and supervisors began to arrive the details of what transpired between Officer London and the Plaintiffs began to unfold. The Plaintiffs were detained for approximately 50 minutes to gather the necessary details of the incident which London and the Plaintiffs were involved in. *See Ray v. City of Chicago*, 629 F.3d 660, 663 (7th Cir. 2011) ("[a] person arrested without a warrant may be held prior to a judicial determination of probable cause for a brief period to carry out administrative steps incident to arrest.").

The Court determines that Officer Williams had probable cause to detain Jones and therefore her seizure was reasonable. Our finding of probable cause bars Jones'

claim for false arrest and unlawful detention under § 1983. The Court grants Officer Williams' motion for summary judgement on Count I of the Plaintiffs' FAC.

## 2. Failure to Intervene- § 1983 (Count II)

The Plaintiffs contend that Officer Williams failed to intervene in their detention and in the Plaintiffs' criminal trial. An officer who is present and fails to intervene to prevent other law enforcement officers from infringing on the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that any constitutional violation has been committed by a law enforcement official; and (2) the officer had a realistic opportunity to intervene to prevent the harm from occurring. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). However, an officer cannot be liable for failing to predict constitutional violations that may occur at some point in the future. *Sandra T.E. v. Sperlik*, 639 F. Supp. 912, 920 (N.D. Ill. 2009).

The record does not support the Plaintiffs' claim that Officer Williams failed to intervene in stopping the perpetration of a constitutional violation. As set forth above, Officer Williams' contact and interactions with Jones were fairly limited when he pulled Jones' maroon Range Rover over and detained her. Furthermore, Officer Williams' interactions with Green and Fisher were non-existent at the scene of their detention. Officer Williams was not present during the initial encounter between Officer London and the Plaintiffs and he had no knowledge of what transpired when

he arrived in response to a 10-1 call for assistance.  Officer Williams merely detained Jones while the facts of the incident were fleshed out.  Officer Williams did not write up the criminal complaint nor did he transport any of the Plaintiffs to the police station.  More importantly, the record is devoid of any evidence that Officer Williams knew of Officer London's deceitful conduct in lying to him about what transpired during the funeral procession or in Officer London's dishonest testimony during the Plaintiffs' criminal trials.

Officer Williams only testified in the trial of Green, where he provided a very limited factual background pertaining to the events that brought him to the scene of the funeral procession and what he did when he encountered Jones' maroon Range Rover.  Absent any indication that Officer Williams knew of any wrongdoing on the part of Officer London, the Plaintiffs' cannot proceed with their claim.  The Court grants Officer Williams' motion for summary judgment on Count II.

### 3. Brady Suppression Violation- § 1983 (Count III)

The Plaintiffs allege that the Defendants committed a violation of *Brady v. Maryland,* 373 U.S. 83 (1963), amounting to a due-process claim under § 1983.  The Plaintiffs contend that Officer Williams deliberately withheld the street camera video of the March 2010 encounter, which was exculpatory to their criminal cases.  The Plaintiffs assert that Officer Williams "suppression" of the street view video constitutes a *Brady* violation pursuant to § 1983.  In order to establish the elements of

a *Brady* violation due process claim, a plaintiff must demonstrate that "(1) the evidence at issue is favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued . . ." *Parish v. City of Chicago*, 594 F.3d 551, 554 (7th Cir. 2009). The duty to disclose "extends to the police and requires that they similarly turn over exculpatory ... evidence to the prosecutor." *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008) (citing *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006)). A plaintiff must show that the withholding or suppression of the evidence "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

The Plaintiffs have failed to respond to Officer Williams' arguments concerning the invalidity of their *Brady* violation claim. "A party's failure to address an argument in a summary judgment response is deemed a waiver." *DeLaney v. Chertoff*, 07 C 5785, 2008 WL 4773163, *3 (N.D. Ill. Oct. 30, 2008). As such, because the Plaintiffs have not developed their argument as to why Officer Williams is liable for a *Brady* violation under § 1983, they have waived their objection to Williams' summary judgment arguments. Even if the Plaintiffs had submitted a well-articulated argument, they cannot surmount their total lack of evidence concerning Officer Williams' knowledge of a street video recording. There is absolutely no evidence suggesting Officer Williams knew of or had the slightest inclination that the

recording existed.  Accordingly, the Court grants Officer Williams' motion for summary judgment on Count III.

### 4. False Imprisonment and False Arrest –Illinois Law (Count V)

The Plaintiffs assert that Officer Williams unlawfully restrained and detained the Plaintiffs in violation of Illinois' prohibition on false arrest and imprisonment.  To prove false arrest and imprisonment, the Plaintiffs must show that Officer Williams "restrained or arrested [them] without having reasonable grounds to believe that [he] was committing an offense." *Miller v. Lewis*, 381 F. Supp. 2d 773, 788 (N.D. Ill. 2005) (citing *Johnson v. Target Stores, Inc.*, 791 N.E.2d 1206, 1220 (Ill. App. Ct. 2003)); *see* 725 ILCS 5/107–2 ( An officer may arrest a person if he "has reasonable grounds to believe that the person is committing or has committed an offense."). "'Reasonable grounds' and 'probable cause' are synonymous for purposes of arrest." *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009) (quoting *People v. Tyler*, 471 N.E.2d 968, 974 (Ill. App. Ct. 1984) (alterations in original)).  Our previous analysis established that Officer Williams had probable cause to detain the Plaintiffs. Consequently, the existence of probable cause bars the Plaintiffs' claim of false arrest and imprisonment against Officer Williams under Illinois law.  The Court grants Officer Williams' motion for summary judgment on Count V.

### 5. Failure to Intervene-Illinois Law (Count VI)

The Plaintiffs posit that Officer Williams' failure to stop Officer London's unlawful activity constitutes a failure to intervene under Illinois law. Despite the Plaintiffs' submission of a failure to intervene cause of action based on Illinois law and § 1983, the Plaintiffs have failed to cite and further disclose an independent Illinois cause of action which they are relying on. Although Illinois courts recognize a failure to intervene claim in the context of a § 1983 violation, the Court is unaware of a separate cause of action for failure to intervene which does not hinge on a § 1983 violation. As we have previously resolved the Plaintiffs' failure to intervene claim under § 1983, the Court grants Officer Williams' motion for summary judgment on Count VI of the Plaintiffs' FAC.

### 6. Malicious Prosecution-Illinois Law (Count VII)

The Plaintiffs contend that Officer Williams maliciously prosecuted the Plaintiffs when he unlawfully detained them, fabricated evidence and testified against them in their criminal trials. Under Illinois law, to state a malicious prosecution claim, the Plaintiffs must show: "(1) the commencement or continuation of an original criminal or civil proceeding by the defendants; (2) termination of the proceeding in his favor; (3) the absence of probable cause; (4) the presence of malice on the defendants' part; and (5) damages." *Swearnigen–El v. Cook County Sheriff's Dept.*, 602 F.3d 852, 863 (7th Cir. 2010). Illinois law recognizes that the existence of

probable cause serves as a complete defense to a malicious prosecution claim. *Logan v. Caterpillar*, 246 F.3d 912, 926 (7th Cir. 2001) (listing the lack of probable cause as a required element for a malicious prosecution claim under Illinois law).

Officer Williams contends that the Plaintiffs have failed to show that he initiated the criminal proceedings against the Plaintiffs and the existence of probable bars the Plaintiffs claims. "In order to be liable for malicious prosecution, 'a defendant either must have initiated a criminal proceeding or his participation in it must have been so active . . . as to amount to advice and cooperation.'" *McCally-Bey v. Kirner*, 233 F. Supp. 2d 1009, 1017 (N.D. Ill. 2002) (citing *Denton v. Allstate Inc. Co.*, 5043 N.E. 756 (1986)). "Put another way, liability for malicious prosecution extends to police officers who played a significant role in causing the prosecution of the plaintiff." *Id*. The Plaintiffs heavily rely on the fact that Officer Williams is named on the Chicago Police Incident Report as one of the reporting officers to the scene of Officer London's 10-1 call. However, there is no evidence Officer Williams instituted any criminal proceedings against the Plaintiffs. Officer Williams merely detained Jones after pulling her vehicle over during the funeral procession. Officer Williams did not write the criminal complaint or complete any arrest report about the incident. It would be expected that Officer Williams' name would be present on the Chicago Police Incident Report due to his interaction with Jones. Furthermore, Officer Williams only testified in Green's trial to provide background information concerning the stop of the Jones' vehicle. Moreover, Officer Williams did not testify

in the trials of Fisher or Jones.  The Plaintiffs have not adduced evidence indicating that Officer Williams commenced the criminal charges against the Plaintiffs.

Additionally, we previously determined that Officer Williams had probable cause to pull over and detain Jones, in response to Officer London's call for assistance.  Therefore, probable cause existed during all periods relevant to Plaintiffs' claims concerning Officer Williams detainment of Jones.  Officer Williams' possession of probable cause is a complete defense to Jones' malicious prosecution claim. *Logan*, 246 F.3d at 926.  Officer Williams' motion for summary judgment on Count VII of the Plaintiffs' FAC is granted.

### 5. Intentional Infliction of Emotional Distress-Illinois Law (Count VIII)

In Count VIII of the Plaintiffs' FAC, they assert an Illinois state law claim for intentional infliction of emotional distress against Officer Williams, alleging that he intended to cause or recklessly disregarded the probability of causing emotional distress when he detained them as they proceeded to a Michelle Green's funeral.  In Illinois, a plaintiff must satisfy three requirements for a showing of intentional infliction of emotional distress: "(1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress; or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional

distress." *Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 746 (7th Cir. 2008) (internal citations and quotations omitted).

Officer Williams contends that his conduct was not extreme and outrageous. "In order to meet the threshold for intentional infliction of emotional distress, the defendant's conduct must extend beyond the bounds of human decency and be considered intolerable in a civilized community." *Id.* at 747; *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992)). The Court employs an objective standard to determine whether the conduct alleged is extreme and outrageous, taking into consideration, among other things: "the degree of power or authority which a defendant has over a plaintiff; whether the defendant reasonably believed that his objective was legitimate; and whether the plaintiff is particularly susceptible to emotional distress because of some physical or mental condition or peculiarity." *Id.*

The Plaintiffs cannot show that Officer Williams conduct was extreme and outrageous, because as explained above, Officer Williams pursued Jones' maroon Range Rover and detained her based on his belief that she had been involved in criminal wrongdoing. The evidence does not show that Officer Williams had any interaction with Fisher or Green when they were pulled over during the funeral procession. Under these facts, Officer Williams reasonably believed that his pursuit of the Jones was legitimate. *See Lewis*, 523 F.3d at 747 (court takes into

consideration the particular facts of the case in determining whether conduct alleged is extreme and outrageous).

Moreover, the Plaintiffs have not presented evidence that they suffered severe emotional distress. In Illinois, "emotional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be severe." *See Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006) (citing *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976)). "Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Id.* (quoting *Kleidon v. Rizza Chevrolet, Inc.*, 527 N.E.2d 374, 377 (Ill. App. Ct. 1988)). Jones' detention and missing the funeral of a friend and loved one is certainly, unfortunate but her "embarrassment and shame" is not sufficient to state a claim for intentional infliction of emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (the distress inflicted must be so severe that no reasonable person could be expected to endure it). Therefore, Count VIII of the Plaintiffs' FAC cannot survive summary judgment.

Accordingly, the Court grants Officer Williams partial motion for summary judgment on Counts I, II, III, V, VI, VII, and VIII.

## II. City of Chicago

The Plaintiffs assert that the actions of Officer Williams and Officer London in conjunction with Lieutenant Evans, were perpetrated pursuant to unlawful de facto policies of the City. The Plaintiffs also allege that it was the policy and/ or custom of

the City to insufficiently investigate officers' allegations of criminal wrongdoing and to inadequately supervise and train Chicago police officers. "While a municipality is not vicariously liable under § 1983 for the acts of its employees, a constitutional deprivation may be attributable to a municipality 'when execution of a government's policy of custom . . . inflicts the injury.'" *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 694 (7th Cir. 1978)). "A local government unit's unconstitutional policy or custom can be shown by: (1) an express policy causing the loss when enforced; (2) a widespread practice constitutional 'custom or usage' causing the loss; or (3) a person with final policymaking authority causing the loss." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). When local government fails to train its officers causing a "deliberate indifference" to a person's rights and causes a deprivation of a person's constitutional rights, the local government is liable to that person for his injuries. *See, e.g., Canton v. Harris*, 489 U.S. 378, 388-89 (1989). However, "[m]isbehaving employees are responsible for their own conduct[;] 'units of local government are responsible only for their policies rather than misconduct by their workers." *Estate of Sims v. County of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (citations omitted). The City challenges the Plaintiffs' ability to establish that Officer Williams', Officer London's and Lieutenant Evans' actions were done pursuant to an unlawful custom or policy of the City.

The Plaintiffs' failure-to-supervise theory can support "a finding of municipal liability because a policy of condoning abuse may embolden a municipal employee and facilitate further abusive acts." *Quade v. Kaplan*, 06 C 01505, 2008 WL 905187, at *16 (N.D. Ill. Mar. 31, 2008) (quoting *Sassak v. City of Park Ridge*, 431 F. Supp. 2d 810, 816 (N.D. Ill. 2006)). However, to establish liability based on the City's failure to investigate, supervise, and discipline its officers, the Plaintiffs must show "deliberate indifference" on the part of the City. *See Sornberger*, 434 F.3d at 1029–30; *Kindle v. City of Harvey*, 00 C 06886, 2002 WL 230779, at *4 (N.D. Ill. Feb. 15, 2002) ("A plaintiff relying on a failure to investigate theory must still meet the deliberate indifference standard adopted by the Supreme Court in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).").  This is "a high threshold," and "[e]ven where significant evidence has been presented indicating flawed investigatory procedures courts still reject the failure to investigate theory where plaintiffs cannot demonstrate 'tacit authorization by city policymakers.'" *Kindle*, 2002 WL 230779, at *4 (citing *Harris*, 489 U.S. at 397); *see also Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011) ("Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." (internal citation omitted)).

Furthermore, the Plaintiffs may prove deliberate indifference by showing that the City "fail[ed] to act in response to repeated complaints of constitutional violations by its officers." *Sornberger*, 434 F.3d at 1029–30 (citing *Harris*, 489 U.S. at 390 & n.

10; *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997) (indicating that failure to act after learning of pattern of violations would be deliberately indifferent)); *see also Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) ("[W]e may find deliberate indifference when a repeated pattern of constitutional violations makes 'the need for further training ... plainly obvious to the city policymakers.' " (citing *Harris*, 489 U.S. at 389 n. 10)); *see also Richardson v. City of Chi.*, 08 C 04824, 2011 WL 862249, at *12 (N.D. Ill. Mar. 10, 2011) ("Continuing adherence to an approach . . . that policymakers 'know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their actions . . . necessary to trigger municipal liability." (citing *Bd. of Cnty. Commis of Bryan Cnty., Oakland v. Brown*, 520 U.S. 397, 407 (1997))).

The Plaintiffs try to tether Officer Williams and Lieutenant Evans' conduct at the scene of the funeral incident with the establishment of an overarching custom or policy of the City's deliberate indifference regarding its failure to train its officers. The Plaintiffs' evidence of a custom or policy fails woefully short. The Plaintiffs have submitted the deposition of Lieutenant Evans as their primary evidence of an unlawful custom or policy. The deposition of Lieutenant Evans only establishes that it was his responsibility to gauge the nature of the evidence in recommending whether a felony or a misdemeanor took place at the scene of the funeral procession. Based on Lieutenant Evans' interactions with Officer London and Green he deemed the conduct of the Plaintiffs to warrant felony charges. The record does not support the

conclusion that Lieutenant Evans or Officer Williams knew of Officer London's fabricated account of what transpired. Absent either officers' knowledge of Officer London's lies, they would have no basis to investigate her misconduct. The Plaintiffs have failed to submit any evidence of a City custom, policy or practice beyond the mere allegations levied in the case at bar.

Even more problematic for Plaintiffs' argument is that it would be impossible for the City's final policymakers to be placed on "notice" of a purported constitutional violation committed by Officer London. *See Hahn v. Walsh*, 762 F.3d 617, 636 (7th Cir. 2014) (plaintiff may show that a municipality caused a constitutional injury "by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned the misconduct of subordinate officers"). In other words, the Plaintiffs cannot prove that the City's final policymakers acted with "deliberate indifference" or turned a blind eye to a pattern of violations when the Plaintiffs have offered no evidence to show that the final policymakers had reason to be aware that the policies or practices posed any risks. *See Pittman ex. rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 780 (7th Cir. 2014) (officials must be aware of risk posed by policies and fail to take appropriate steps to address the situation).

Beyond the Plaintiffs' lack of submitted evidence, the City correctly points to the Plaintiffs misplaced reliance on the March 2010 incident as the only evidence which they rely on to support holding the City liable under *Monell*. A single incident is not sufficient to establish a "widespread custom or practice." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) ("... no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except it must be more than one instance, or even three."); *Hossman v. Blunk*, 784 F.2d 793, 796–97 (7th Cir. 1986) (stating that "[a]lleging one specific incident in which the plaintiff suffered a deprivation and generally alleging a custom or policy will not be adequate"); *Gustafson v. Jones*, 117 F.3d 1015, 1022 (7th Cir. 1997); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 399 (1997) (finding that a single hiring decision was not enough to show that the County itself had a policy or custom that caused the plaintiff's injuries). Although there is not a bright line rule for establishing what constitutes a widespread custom or practice, the single incident suggested by the Plaintiffs does not suffice. *Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014) (a single incident of sexual harassment which was alleged to be inadequately investigated did not give rise to establishing a pervasive custom which would give rise to *Monell* liability). Accordingly, the Court grants the City's motion for partial summary judgement on Count IV.

## CONCLUSION

For the aforementioned reasons, the Court grants Officer Williams motion for summary judgment on Counts I, II, III, V, VI, VII, and VIII. The Court also grants the City's partial motion for summary judgment on Count IV.

_____

Charles P. Kocoras
United States District Judge

Dated:  5/6/2015